OPINION OF THE COURT
Jones, J.
Incriminating statements made by defendant to the police after they had been informed that he had an attorney, as well as physical evidence thereafter seized from his automobile, must be suppressed as obtained in violation of his State constitutional right to counsel. The erroneous admission of this evidence cannot be regarded as harmless, nor can it be concluded on this record that the evidence was admissible on any theory of an emergency exception to the right -to counsel rule as now advanced by the dissenters.
Linda Jill Velzy, an 18-year-old student attending the State University College of Arts and Sciences at Oneonta, was last seen alive at approximately 6:00 p.m. on Friday, December 9, 1977. She had just finished visiting several young women who were seeking another roommate to share their apartment. On leaving she told them that she would walk back to the college campus or perhaps hitch a ride. She was reported missing by her roommate the following day. An intensive search was begun and carried out as a missing person investigation. The New York State Police, the Oneonta city police and the college campus security guards joined forces, co-ordinating their efforts and establishing a single command post in the Municipal Building on Main Street in the City of Oneonta. A search was made of the surrounding countryside and woods which included the use of helicopters and bloodhounds. The police interviewed and questioned over a hundred people, including defendant.
When he was questioned defendant informed the investigating officers, Detective Angellotti of the Oneonta police and Investigator Dabreau of the State Police, of his whereabouts on the evening of December 9 and denied any knowledge of the Velzy disappearance. During the course of this conversation, at the request of the officers, defendant agreed to submit to a polygraph examination. The *169 police thereafter from time to time continued to question defendant and communicated with his family.
Defendant at the time was under indictment returned by the November, 1977 Grand Jury in which he was charged with sodomy in the first degree ánd unlawful imprisonment in the first degree. He had been arraigned on these charges on November 9, 1977 and at that time had appeared with his attorney, John H. Owen, Otsego County Public Defender, although the latter had not then been formally appointed to represent him. Defendant again appeared on this indictment before the Otsego County Court on December 12, 1977 on an application to relieve the Public Defender and to permit defendant to retain counsel of his own choosing. The court granted defendant two weeks to obtain an attorney and adjourned the matter to December 28, 1977.
As a consequence of the earlier police request that defendant take a polygraph examination, he contacted attorney Owen, who advised him not to submit to the test. The police continued questioning of defendant on December 12, 13 and 15, until on December 15 or 16, attorney Owen telephoned Detective Angellotti, informed him that he had advised his client not to take the polygraph test, and directed that the police either arrest defendant or cease their harassing questioning of him.
Although direct attempts to question defendant ended in compliance with Owen’s demand and were not resumed until after defendant’s subsequent arrest, later that month members of the consolidated investigating team arranged to question defendant indirectly through an informer named Arthur Hitt. During the course of the missing person investigation Hitt’s attorney had approached the State Police indicating that his client possessed certain information with respect to the Velzy matter. Hitt, the owner of a logging site, for whom defendant occasionally worked, faced pending felony charges. The police were told by Hitt that on Monday, December 12, defendant had asked him to tell anyone who might inquire that he was with Hitt until 8:00 p.m. on Friday, December 9, the evening of Miss Velzy’s disappearance. Although defendant did not then tell Hitt why it was important for him to *170 establish an alibi for that Friday evening, Hitt reported the incident to his own attorney. Thereafter (and after attorney Owen had expressly directed the police to cease questioning defendant about the Velzy matter), on December 21 at a conference in the chambers of the County Court Judge attended by the Judge, the prosecutor, Hitt and Hitt’s attorney, it was agreed that Hitt would be permitted to plead guilty to charges not requiring incarceration and would, in fact, not be sentenced to incarceration, in exchange for his co-operation in the Velzy investigation, provided such co-operation led to the arrest of at least one person criminally responsible for Velzy’s disappearance. Hitt’s attorney testified that he understood the objective at the time to be “to get Knapp”.
During the next 10 days, Hitt made several telephone calls to defendant which were recorded by State Police investigators. In the same period the State Police also outfitted Hitt with recording equipment for several face-to-face meetings with defendant. In only two of these more than half dozen recorded conversations was any relevant or incriminating statement made. Defendant twice repeated his request, without elaboration, that Hitt support defendant’s alibi for Friday evening, December 9. In exchange for Hitt’s agreement to do that, defendant agreed to support an alibi for Hitt’s own pending unrelated charges.
On December 31 the case finally broke open when it was disclosed why it was that defendant wanted an alibi for December 9. It was then that defendant confirmed to Hitt that he had killed Linda Velzy. In an unrecorded conversation, defendant related that he had picked up the Velzy girl while she was hitchhiking on West Street in the City of Oneonta around 6 o’clock or a little after on December 9, that he had had a sexual encounter with her, that as they were coming back into town differences arose between them and she got all upset and jumped out of the car, that she lay in the ditch semiconscious, that he got out of the car and put her in the back seat and told her that he was going to take her to the hospital, and that instead he drove over into Delaware County where he hit her in the throat three times with his fist, killing her. He added that he wanted to *171 move the body to Hitt’s logging site, and Hitt agreed to assist.
Hitt alerted the State Police and on January 1, 1978 informed them that defendant and he were going to move the body of Linda Velzy from the place where it was then located to a grave on Hitt’s logging site on Winney Hill Road. On the basis of this information the police set up a stakeout to await the arrival of defendant and Hitt with the deceased girl’s body. Shortly after 6:00 p.m. defendant and Hitt arrived at the logging site, and defendant was observed dragging the frozen body to a grave which had been prepared by use of a bulldozer furnished by Hitt. The police announced their presence and thereupon seized and arrested defendant. It was the testimony of some of the police witnesses that as he was being grappled to the ground he blurted out, “I am sorry; I am sorry. I killed her. I am no good. Please shoot me.”
Defendant was taken to the State Police station in Unadilla where he was given his constitutionally mandated preinterrogation warnings. He waived his right to counsel and made a full confession of his involvement in the disappearance and death of Linda Jill Velzy which was reduced to typewritten form and signed by him. Based entirely on Hitt’s sworn testimony as to admissions made to him by defendant, the police obtained a warrant to search the car defendant had been driving on December 9. The search uncovered a contact lens, wood chips, cat and dog hairs, blonde human hair and Christmas decoration “glitter squares”.[1]
The January, 1978 Otsego County Grand Jury returned an indictment charging defendant with two counts of murder in the second degree. In count one it was alleged that defendant intentionally caused Linda Velzy’s death by beating her about the head and neck with his fists (Penal Law, § 125.25, subd 1), and in count two it was alleged that defendant, in circumstances evincing a depraved indiffer *172 ence to human life, recklessly created a grave risk of her death and caused her death by failing to transport her for medical care (Penal Law, § 125.25, subd 2).
On pretrial motions by defendant, the trial court denied suppression of the blurted-out expression of guilt and remorse made by defendant when he was apprehended at the grave site, of the two detailed confessions (the oral admissions made to Arthur Hitt before defendant’s arrest and the signed typewritten confession made to the police after his arrest), and of the various items of physical evidence seized from defendant’s car pursuant to the search warrant.
At trial, although none of the taped recordings of defendant’s conversations with Hitt were offered in evidence, Hitt was himself permitted over objection to testify with respect to the statements made to him on December 31 in which defendant detailed his participation in the disappearance of Linda Velzy and the associated subsequent events. The prosecution was also permitted to introduce the items of physical evidence taken from defendant’s car and his signed typewritten confession.
Defendant took the stand and testified that, by Hitt’s own admission to him, it was Hitt rather than defendant who had had the sexual encounter and who had killed the Velzy girl, that Hitt supplied the car and drove it and also furnished the shovel, sheet and bulldozer for the reburial and that it was Hitt who took defendant to the site of the original placement of the body in Delaware County and then requested defendant’s assistance in reburying the body.
At the conclusion of the trial the jury was instructed that it could find defendant guilty of either count or neither count but not both. After deliberation the jury acquitted defendant of intentional murder but convicted him of reckless murder.
On appeal, the Appellate Division rejected all but one of the several contentions advanced on defendant’s behalf. As to that contention, each Judge on the panel agreed that the signed typewritten confession had been obtained in violation of defendant’s State constitutional right to counsel. *173 Concluding, however, that the evidence of defendant’s guilt was so overwhelming that the written confession was merely surplusage, the majority affirmed the conviction on a harmless error analysis. One Justice dissented from this analysis.
Although we agree that only the denial of defendant’s motion to suppress merits our discussion, we are compelled under settled principles of State constitutional law to conclude that violation by the police of defendant’s right to counsel required suppression not only of the signed typewritten confession but also of testimony as to his earlier oral admissions made to Hitt, as well as of all physical evidence seized from his car. Only the blurted-out expression at the grave site was admissible. Because the evidence which should have been suppressed constituted the very core of the People’s case, it cannot be concluded that its admission was harmless. Accordingly, defendant’s conviction must be reversed and the case remitted for further proceedings on the second count of the indictment.
We find no ground to disturb the denial of suppression of the police testimony as to the statement that defendant blurted out when he was arrested; both courts below have found that it was spontaneous (cf. People v Lanahan, 55 NY2d 711).
For the purpose of determining whether the admissions made by defendant to Hitt should have been suppressed it must be concluded that at the time, December 31, Hitt was acting as an agent for the police pursuant to the arrangement for that purpose made in the County Judge’s chambers on December 21. It was the State Police who directed and supervised Hitt in his role as their informer, and, of course, they were chargeable with knowledge of the direction given by defendant’s attorney to the Oneonta police that defendant was not to be questioned further in relation to the Velzy matter (cf. People v Garofolo, 46 NY2d 592; People v Pinzon, 44 NY2d 458). In employing Hitt as their agent to obtain incriminating statements from defendant who was represented by counsel, the police violated defendant’s State constitutional right to counsel (cf. People v Rogers, 48 NY2d 167). It follows that Hitt’s testimony as to *174 the incriminating statements made by defendant to him must be suppressed notwithstanding that defendant was not in police custody at the time the statements were made (People v Skinner, 52 NY2d 24).[2]
By similar reasoning the physical evidence obtained pursuant to the search warrant issued on the basis of Hitt’s testimony as to defendant’s admissions to him must be suppressed (cf. Wong Sun v United States, 371 US 471).
Finally, as all the Justices at the Appellate Division agreed, defendant’s signed typewritten statement made after his arrest while he was in police custody, at a time when to their knowledge he was represented by counsel who had directed the termination of all questioning, should have been suppressed.
It remains only to comment briefly on the views advanced in the dissent. Whatever may be said of a missing-person-emergency exception to the right of counsel rule — an issue as to which we decline to express any opinion — it suffices for the purposes of the present appeal to observe that there has been no address to any such theory by either the People or defendant in their briefs or on oral argument. Nor is there any suggestion that this contention was considered by County Court or at the Appellate Division, and neither court made any factual determination on which such an argument could be predicated. Accordingly, it would be jurisprudentially both inappropriate and imprudent for us at this stage to base an affirmance of defendant’s conviction on any such ground. If there is to be an emergency exception in right to counsel cases, its recognition should be based on full development of an evidentiary *175 record and come after the implications and ramifications of such an exception have been explored and considered with full participation of counsel, both at nisi prius and in the Appellate Division.
Moreover, even if the missing-person-emergency rule were to be recognized, its application in this or any other individual case would necessarily depend on a preliminary factual determination, and, as stated by Judge Meyer, the present record would not permit us, as a matter of law, to make the prerequisite factual determination that the police activities with respect to defendant after December 21, 1977 were in furtherance of any emergency search for a missing person. Although the police in a co-ordinated task force initially launched an extensive missing person investigation following Linda Velzy’s disappearance on December 9, the evidence now before us is not so overwhelming as to compel the conclusion that the purpose of the December 21 conference in the County Judge’s chambers and the use of Hitt by the police as their agent on December 31 was in furtherance of the search for Linda and not to obtain evidence of criminal activity on the part of defendant. The lapse of time as well as the other circumstances of the arrangement with Hitt disclosed in the record give rise to no inference that the police entertained an expectation of finding Linda Velzy alive.
Nor would it be proper, in our view, to send the case back for a new hearing, the introduction of new evidence and the possible development of a new theory on which to sustain the admission of the evidence which should, on the present record, have been suppressed (cf. People v Havelka, 45 NY2d 636). There is no contention that, had they chosen to do so, the People could not have offered any evidence available to them to sustain such an emergency exception at the original suppression hearing. That such a theory appears not to have occurred to anyone (until postargument deliberation in our court) provides no justification to grant “the People a second chance to succeed where once they had tried and failed” (People v Bryant, 37 NY2d 208, 211).
For the reasons stated, the order of the Appellate Division should be reversed, defendant’s conviction vacated, *176 testimony as to his oral admissions to Hitt, his signed typewritten confession, and the physical evidence seized pursuant to the search warrant suppressed, and the case remitted to Otsego County Court for further proceedings on the second count in the indictment.

. At trial, the lens was matched to one missing from Miss Velzy’s right eye, the wood chips were shown to be similar to a chip found in her pubic hair, the animal hair was proved consistent with hair found on the interior surfaces of her clothing, the human hair was established to be consistent with her own hair, and the glitter squares were seen to be the same as those found in the sheet in which her body was partially wrapped.

. In this case there is no room for a contention that the purpose of the police in their use of Hitt as an informer was to elicit evidence from defendant as to the commission of a subsequent, discrete criminal transaction (cf. People v Ferrara, 54 NY2d 498; People v Middleton, 54 NY2d 474). Defendant’s incriminatory statements on December 31 were unrelated to any new crime. The record discloses that they were elicited entirely independent of defendant’s request for an alibi; defendant was relating the details of his past crime for a purpose independent of his request for an alibi. In any event any crime of hindering prosecution had been fully committed on December 12 when defendant made his request and when that request was repeated in taped conversations, apparently prior to December 21. There was no occasion for the continued use of Hitt with respect to any such crime. There can be no doubt that on December 31, Hitt was acting as police agent to obtain evidence as to defendant’s participation in Linda Velzy’s disappearance.