## The People of the State of New York, Respondent, v William Paul Weinman, Appellant.

Third Department, December 16, 1982

**APPEARANCES OF COUNSEL**

*McDermott & Cheeseman (Peter R. Porco* of counsel), for appellant.

*Sol Greenberg, District Attorney (Ilene R. Bergman* of counsel), for respondent.

**OPINION OF THE COURT**

Levine, J.

The central issue on this appeal is whether County Court should have suppressed defendant's confessions because they were obtained in violation of defendant's State constitutional right to counsel.* This largely turns upon analysis of the testimony of Albany Police Detective Harrington and attorney Howard Roth at the suppression hearing. Harrington testified that during the course of the investigation of the unexplained May 24, 1981 disappearance of

---

* County Court's decision denying defendant's motion to suppress is reported in *People v Weinman* (111 Misc 2d 828).

one Vincent Scuderi, the attention of the Albany Police Department focused upon defendant, a close friend of Scuderi. They interviewed defendant at police headquarters on May 29 and May 30 concerning his relationship with Scuderi, their contacts immediately before Scuderi vanished, and defendant's whereabouts on the day of Scuderi's disappearance. About June 2, 1981, Detective Harrington, who was in charge of the investigation, again called defendant's home, spoke to defendant's father because defendant was not there, and asked that he bring defendant to police headquarters so that a polygraph test could be set up for defendant, all of which was assented to by the elder Weinman. Almost immediately upon hanging up, Harrington again called the Weinman home to ask an additional question, but was emphatically and heatedly rebuffed by defendant's mother, who demanded that the police stop calling and harassing the family. Harrington further testified that shortly thereafter on the same evening, he received a call from Howard Roth, who identified himself as an attorney (he had in fact been defendant's father's attorney for many years). The detective related that he first explained to Roth that the interest of the police in defendant was in connection with the investigation into Scuderi's disappearance, and then a discussion ensued concerning Harrington's request that defendant submit to a lie detector test. However, Roth never said in so many words that he was retained to represent defendant. According to Harrington, Roth indicated that he intended to contact attorney Paul Cheeseman concerning the matter, since he (Roth) was not a criminal law specialist, and that he (Roth) would get back to Harrington subsequently. One week later, having received no further communication from Roth, Harrington contacted attorney Cheeseman and was told that neither Roth nor the Weinmans had retained him. Harrington had no further contact with the Weinmans.

On June 12, the body of Vincent Scuderi was found in the Schroon Lake area of Essex County. Early the following morning, members of the New York State Police and the Albany Police Department set up a surveillance in the vicinity of defendant's home. They observed defendant

leave and enter his truck, and they then followed him to a nearby Neba sandwich shop. When defendant left Neba's and was about to re-enter his vehicle, several members of the New York State Police approached him and requested that he accompany them in a troop car to the Loudonville State Police barracks. Upon his arrival at the barracks, defendant was advised of his *Miranda* rights and of the discovery of Scuderi's body and thereafter made both an oral and written confession of the murder and burial of Scuderi's body.

Roth's testimony at the suppression hearing was clear and unequivocal: on the evening of his telephone conversation with Harrington he had first been called by defendant's father concerning the repeated police contact and the latest police request that he and his son appear at Harrington's office for the purpose of defendant's submission to a lie detector test. Roth testified that he then called Harrington, informed him that he represented the Weinman family, instructed him that the police were to cease questioning members of the Weinman family, and stated that, on Roth's advice, defendant and his father would not be coming down to headquarters to take the test or answer questions. Roth further testified that he had told Harrington that he would not permit defendant to submit to a lie detector test or, at the least, he might permit it if necessary to "clear up this matter", but then only with a lawyer present. Roth stated that the matter was left that Roth was going to try to contact attorney Cheeseman and then he (Roth) would later get back to Harrington.

Comparing the testimony of the two principal witnesses, we see agreement at several significant points. Thus, Harrington's direct testimony confirmed Roth's call, that he identified himself as an attorney, that they discussed defendant's submission to a lie detector test, and that Roth would recontact him after enlisting the aid of Cheeseman. Moreover, Harrington either admitted or failed categorically to deny other pivotal facts developed in the evidence submitted by defendant. Thus, Harrington conceded that defendant's father informed him that he would contact a lawyer when questioned concerning the lie detector test: "THE WITNESS: It is in fact true that Mr. Weinman did state

he wanted to contact his lawyer." When asked to confirm or deny that during the telephone conversation Roth told him that "if there was any further talk or polygraph going to be had with William Weinman, that he wanted a lawyer there, didn't he?", the detective only responded, "I don't recall that being said". When asked by the court whether he was denying that any such statement was in fact made, Harrington merely reiterated his lack of recollection. Harrington also refrained from denying that Roth had informed him that neither the elder Weinman *nor the defendant* would be coming to his office for purposes of the polygraph test; "I would say that it's very possible that he did say that. I don't know". Finally, Harrington admitted having received the impression from the conversation that Roth "was trying to scare us off" and would not deny awareness that Roth "was trying to get the police to stop from looking at Billy".

The critical facts thus established from the foregoing conceded or uncontested evidence were that the Albany police knew that (1) Roth had been asked by defendant's father to act in his professional capacity on behalf of defendant in connection with aspects of the investigation of defendant's involvement in the Scuderi disappearance; (2) Roth, in calling Harrington, was acting in his capacity as a lawyer in connection with the police investigation of defendant's involvement; and (3) Roth was speaking on behalf of defendant when he stated his opposition to the lie detector test and that defendant and his father would not be appearing at Harrington's office for either the test or further questioning. Indeed, Harrington's immediate and continued abstinence from further direct contact with defendant after the Roth conversation and his alternative approach to Cheeseman are only explainable on the basis of the foregoing awareness.

Based upon what was thus established, the conclusion is inescapable that the police were aware that there had been an entry of counsel on defendant's behalf prior to the interrogation which led to his confessions on June 13; therefore, defendant's State constitutional right to counsel had "indelibly attached" (*People v Settles,* 46 NY2d 154, 165) and his waiver of that right was ineffective because it

was made in the absence of counsel (*People v Hobson,* 39 NY2d 479, 481). Under the principal entry of counsel cases decided by the Court of Appeals, the foregoing establishes that defendant's right to counsel had attached, as a matter of law. As early as *People v Sanchez* (15 NY2d 387), the court held that the "operative fact" is that the defendant confessed while being interrogated by the police "after he had requested the aid *of an attorney or one retained to represent him had contacted the police in his behalf"* (*supra,* at p 389; emphasis added). In *People v Arthur* (22 NY2d 325), the court reiterated that the right to counsel attaches once "an attorney has communicated with the police for the purpose of representing the defendant" (*supra,* at p 329). Subsequent cases have applied the rule even where counsel's assistance was requested not by the accused but by his family without his knowledge (*People v Garofolo,* 46 NY2d 592; *People v Pinzon,* 44 NY2d 458); and when there was no formal retainer (*People v Arthur,* 22 NY2d 325, 329, *supra*). Once the police are informed that an attorney is acting on behalf of a suspect, further questioning is barred despite the absence of explicit instructions by counsel to that effect (*People v Garofolo, supra,* p 600; *People v Arthur, supra,* p 329).

Since in our view, the admitted or uncontested facts bring this case within the foregoing precedents, the suppression court was not at liberty to make a contrary ruling by the device of a blanket resolution of all unspecified conflicts between the testimony of Roth and Harrington in favor of the detective (*People v Weinman,* 111 Misc 2d 828, 833, *supra*). The failure of Harrington's recollection on key facts in Roth's testimony was insufficient to create a conflict where none existed. Equally unavailing were the extenuating circumstances concerning the nature of Roth's role alluded to by the court to distinguish the entry of counsel cases, such as the absence of any retainer or payment for his services, or of any request by defendant that he undertake to represent him (*supra*). At most, the circumstances relied upon by County Court served only to establish that there may have been ambiguities in Harrington's mind concerning the extent of Roth's role in interceding professionally on defendant's behalf. However,

any such uncertainties on the part of the police as to the scope of an attorney's representation preclude questioning (*People v Marrero,* 51 NY2d 56, 59; *People v Coleman,* 42 NY2d 500, 507; *People v Ramos,* 40 NY2d 610, 617-618). As stated in *Ramos* (pp 617-618): "If, in fact, the prosecution was in doubt as to whether an attorney had entered the proceeding, the burden should rest squarely on it to insure that the defendant's right to be represented by counsel be protected. The ambiguity of the lawyer's statement or the manner in which the defendant's attorney went about representing his client cannot be seized by the prosecution as a license to play fast and loose with this precious right". Since the record is absolutely clear that the State Police and the Albany Police Department were working in close co-operation when defendant was picked up and interrogated and made his confessions, the members of both departments are chargeable with Detective Harrington's awareness (*People v Pinzon,* 44 NY2d 458, 463-464, *supra*).

Finally, the oral and written confessions of defendant are not saved under County Court's alternative rationale for upholding them, namely, an emergency "missing persons investigation" exception to the entry of counsel principle. It is true that it would now appear that four members of the Court of Appeals recognize that there may be a right to question an individual during the course of a police missing persons investigation even after counsel has entered the matter on his behalf (*People v Knapp,* 57 NY2d 161). At issue in the *Knapp* case, however, was the admissibility of statements made by the accused to an undisclosed police informer prior to discovery of the victim's body. Judge WACHTLER, on behalf of the dissenters, stated the exception as follows: "In sum, when the police are investigating a report that a person has disappeared under mysterious circumstances, *and has not yet been found,* the State constitutional right to counsel should not prohibit the police from approaching any member of the community who may have useful information, including those who have a record of prior convictions or pending charges or who have retained counsel to immunize themselves from police inquiries" (*People v Knapp,* 57 NY2d 161, 188, *supra;* emphasis added). This exception obviously has no

applicability to the police interrogation leading to defendant's confession on June 13, since Scuderi's body had been discovered and identified the previous day. Instead, defendant's interrogation and confession here more closely resemble the station house interrogation and confession by the defendant in *Knapp* after he was arrested while attempting to dispose of the victim's body. As to that confession, all of the Judges of the Court of Appeals (and each Judge on the panel at the Appellate Division level [*People v Knapp,* 82 AD2d 971]) were in agreement that the earlier intercession of an attorney, although during the missing person stage, required suppression under the entry of counsel rule.

County Court's erroneous denial of defendant's motion to suppress his confessions, therefore, requires a reversal of the conviction. Defendant's motion to suppress also covered various items of tangible evidence seized pursuant to a search warrant which had been based in part upon defendant's confession. Understandably, in view of County Court's ruling on the confessions, the record was not adequately developed as to any possible facts or circumstances which might render such evidence admissible apart from the confessions. Therefore, in addition to remittal for trial, the case should also be remitted for a further suppression hearing with respect to the items of tangible evidence covered by defendant's motion.

The judgment should be reversed, on the law and the facts, the motion to suppress defendant's confession granted, and the matter remitted to the County Court of Albany County for further proceedings not inconsistent herewith.

Sweeney, J. P., Kane, Casey and Weiss, JJ., concur.

Judgment reversed, on the law and the facts, motion to suppress defendant's confession granted, and matter remitted to the County Court of Albany County for further proceedings not inconsistent herewith.