■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM· J. MEDVECKY, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered September 17, 1981, upon a verdict convicting defendant of the crimes of burglary in the third degree, tampering with public records in the first degree, and grand larceny in the third degree. Defendant was a certified "family care provider" for the Eleanor Roosevelt Developmental Services (ERDS) of the New York State Office of Mental Retardation and Developmental Disabilities. Defendant was so certified from 1972 to July 31, 1980 and cared for several retarded children in his home during this period, including one Christopher Hunter who lived with him for some 19 months. The Hunter youth was removed from defendant's home in October, 1980. Defendant then commenced a Family Court proceeding to gain permanent custody of the boy. Defendant spent the morning of May 4, 1981 involved in custody proceedings in the Family Court. Upon leaving the courthouse, he went to the Capital District Psychiatric Center (CDPC), home of ERDS. He was later observed about noontime, walking through the courtyard of the CDPC, holding what appeared to be one of the ERDS files. Shortly thereafter the file of Christopher Hunter was discovered missing. Sometime in the afternoon of May 4, 1981, the personnel at ERDS decided to try to contact Medvecky to possibly reclaim the file. Doug Warner, an ERDS staff member, placed a call to Michael Friedman, known to be defendant's lawyer, and left a message with another lawyer in Friedman's office that the Hunter file was missing and that Medvecky was seen leaving the building with it. On the morning of May 5, 1981, the supervisors at ERDS made a decision to contact the police concerning the missing file. The Albany police obtained a search warrant on the strength of affidavits from three staff employees of ERDS. This warrant was executed on the evening of May 5, 1981 at defendant's home. The executing officers found many records and seized several documents which allegedly came from the original file of Christopher Hunter. In answer to questions, defendant said the documents were rightfully in his possession. A second search warrant was executed on May 6, 1981 but no further documents were seized. On the second evening, in response to questioning about the location of the rest of the original files, defendant only replied with the name of his lawyer, Michael P. Friedman, to each question. Detective Tuffy, an officer present on both evenings, testified that defendant at least once mentioned to the officers on the first evening that he was represented by this attorney. Defendant was indicted on May 8, 1981 for burglary in the third degree, tampering with public records in the first degree, and grand larceny in the third degree. A pretrial motion to suppress the property seized on the evening of May 5, 1981 and statements made by defendant on both the evening of May 5 and the following night was denied. Following a jury trial defendant was found guilty of all charges and sentenced to one and two-thirds to five years on the burglary count, one and two-thirds to five years on the tampering count and one and one-third to four years on the grand larceny charge. The sentences were to run concurrently. This appeal followed. Defendant's initial contention that his right to counsel was violated at the time the police executed the search warrant at his home on the evening of May 5, 1981 and that therefore certain statements he made were inadmissible is rejected. The judgment of conviction should be affirmed. Defendant first argues that his right to counsel attached because he was "in custody" on the evening of May 5, 1981, during the time when the police executed the search warrant. To determine if a custody situation is present, the courts look to what "a reasonable man, innocent of any

crime, would have thought had he been in the defendant's position" (*People v Yukl,* 25 NY2d 585, 589). Absent an obvious restraint, the court will consider four factors: (1) was there probable cause for arrest; (2) what was the subjective intent of the interrogation; (3) what was the suspect's subjective belief as to his freedom; and (4) was the investigation focused on the suspect (*People v Claudio,* 85 AD2d 245, 253). It appears there was no obvious restraint of defendant here. After the documents were discovered in defendant's home there may well have been probable cause for arrest, but it is significant that defendant was not arrested at that time. It appears from the few questions asked that the intent of the questioning was merely investigatory and explanatory. Concerning the third factor, we note that defendant was in his own home with no restraints placed on him and, as the trial court noted, in such circumstances a reasonable man would have believed himself free to go at any time. Finally, although defendant was clearly the focus of the investigation at the time, that factor alone is not sufficient to support a finding of custody (*id.,* at p 254). Considering all the factors, we conclude defendant could not reasonably be said to have been in custody on the evening of May 5, 1981 when the warrant was executed. Defendant next argues that formal judicial proceedings had been commenced against him prior to the evening of May 5, 1981. He maintains that the complaint of the ERDS personnel to the Albany police that the file was missing constituted sufficient "judicial activity" in the case to cause his right to counsel to attach. We disagree. In New York State, although a suspect is entitled to an attorney at "any critical stage of the prosecution", such a stage generally commences only upon the filing of an accusatory instrument (*People v Settles,* 46 NY2d 154, 165). While certain other procedures, such as a court order of removal (*id.*) or an order securing the person of the defendant in a lineup (*People v Coleman,* 43 NY2d 222), may indicate the commencement of formal proceedings, these procedures involve the formal entrance of the authority of the court into an ongoing investigation. We conclude that the signing of the search warrant in the instant case was not of such significance as to serve as a basis for a finding that a critical stage of the prosecution had been reached entitling the suspect to the assistance of an attorney. Defendant next contends that his right to counsel had attached because his attorney, Michael P. Friedman, had formally entered the case prior to the evening of May 5, 1981. We find this argument lacks merit. We do not here have a situation of the clear-cut entry of an attorney into the case such as existed in *People v Skinner* (52 NY2d 24) and *People v Knapp* (57 NY2d 161). In *Skinner,* defendant retained an attorney after repeated questioning by police concerning his involvement in a murder. His attorney personally contacted the police in order to inform them that he was representing Skinner and that all further questioning of this client should be in his presence. In *Knapp,* the defendant was questioned numerous times concerning a murder at a time when he was under indictment on an unrelated sodomy charge. The attorney, after being contacted by Knapp, informed the authorities that he was representing Knapp on the murder charge also. In the case at bar, there is no background of several contacts by the police over a period of time for purposes of questioning defendant as was present in both *Skinner* and *Knapp.* Further, in each case the attorney communicated directly to the authorities the fact that he was representing the defendant in the particular criminal matter. There was no question of the "entry" of the attorney in those cases. Here, the circumstances are different. The statement by Medvecky stating that attorney Friedman represented him was equivocal. Absent is the type of affirmative act present in *Skinner* and *Knapp* showing that Medvecky was represented in the new matter under investigation. Thus, no "entry" of defendant's attorney

occurred which would invalidate the statements made by defendant to the police on the evening of May 5, 1981. We have examined defendant's other contentions of error and find them unpersuasive. We find there was no abuse of the discretion exercised by the trial court in sentencing defendant and we will not disturb the sentences imposed. The judgment should, therefore, be affirmed. Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.