OPINION OF THE COURT
Jerome L. Reinstein, J.
In addition to the perceived need for legislation to correct an apparent oversight in the law, several novel issues were raised at the Massiah (Massiah v United States, 377 US 201) hearing held herein.
Defendants were separately indicted, inter alia, for murder in the second degree. Upon the People’s application which alleged, among other things, that the witnesses in both cases would be the same, an order consolidating the two cases was entered.
During discovery proceedings counsel for defendant Odierno requested copies of any statements made by his client. The District Attorney’s equivocal response was that if there were any statements, they were not discoverable because they were not made to a public servant engaged in law enforcement activity or to a person then acting under his direction or in co-operation with him; a position sus *331 tained by another Justice of this court. (See CPL 240.20, subd 1, par [a].)
The case was thereafter sent to this part for a hearing on defendants’ several suppression motions and then for trial. After a lengthy suppression hearing and decision thereon a jury panel was sent for and obtained. Then, for the first time, the court was advised that defendant Odierno had allegedly made inculpatory statements to a fellow inmate at Rikers Island; and it was furnished a copy of a written summary of “90%” of said statements. A cursory reading of the said summary revealed not only the probable need for a severance of defendant Buono’s case (see Bruton v United States, 391 US 123), but the strong possibility that defendant Odierno’s Sixth Amendment right to counsel had been violated. (Massiah v United States, supra; United States v Henry, 447 US 264.) The jury panel was discharged and another hearing then held to resolve the Massiah and Bruton issues. Based on the credible evidence adduced at such hearing the following findings of fact and conclusions of law were made.
Commencing in 1967 and for the next 14 years William Burns (an assumed name used to conceal his true identity for fear of reprisals) acted as an informant (for which he was sometimes paid) for various Federal, State and local law enforcement officials. In 1977, while working with New York City police officials on one investigation, he and another person attempted to sell certain confidential information to the target of the investigation. When this was disclosed Burns was indicted for attempted grand larceny, pleaded guilty to the indictment and absconded. After being sentenced in absentia he was apprehended in Texas, returned to New York and lodged in the Rikers Island Hospital on August 11, 1982, to await trial on a then pending bail jumping charge. Mr. Odierno arrived at that facility after his arraignment on August 28, 1982, on the instant indictment.
Between the end of August and mid-December, 1982, Odierno made inculpatory statements to Burns, some wholly unsolicited and others divulged in the hope that Burns, through his contacts with Federal law enforcement officials, could assist defendant Odierno in obtaining a *332 transfer to a Federal correctional facility. Burns was contacted by the police in early January, 1983, and disclosed the substance of these statements.
On September 21, 1982, a Bernard Valyo arrived at Rikers Island Hospital. Valyo learned of the incriminating statements made by Odierno and contacted the Bronx District Attorney’s office in the hope of trading this information for a favorable “deal” for himself. Burns, unable to help Odierno, now volunteered to help Valyo. On November 24, 1982, Valyo met with Detective Michael Geary, who was in charge of investigating the homicide for which defendants were indicted and was asked by Geary to obtain certain additional information from Odierno. Detective Geary then knew that Burns was assisting Valyo in obtaining, or attempting to obtain, such information.
Applying the holdings in Massiah (377 US 201, supra) and Henry (447 US 264, supra) the court concluded that Burns (who is a prospective trial witness) became a subagent of law enforcement officials as of November 24, 1982. The People were thereupon precluded, on their direct case, from introducing any statements allegedly made by Odierno to Burns on or after that date; and the prosecutor was directed to disclose all statements allegedly made subsequent to November 24, 1982.
Defense counsel then sought disclosure of all of the statements, whenever made, on the theory that he was entitled to contest the dates on which Burns testified they were made. The court disagreed, holding that any dispute as to when these statements were made was for the jury to decide, as a matter of fact; and not for the court to determine as a legal or mixed legal and factual issue.
In People v Washington (51 NY2d 214), the Huntley hearing court determined that the credibility of the testifying police officer had been so impaired that the People had failed to prove beyond a reasonable doubt (a) that the required preinterrogation warnings had been administered to defendant (see Miranda v Arizona, 384 US 436) and (b) that certain alleged statements had in fact been made by him. The Court of Appeals held the latter finding was beyond the scope of the Huntley hearing and any dispute as to whether the defendant made such statements *333 was for the jury to decide. It would seem to logically follow that if the jury is to determine whether a statement was made, then any dispute as to when it was made should also be resolved by the same fact finder. In such circumstance the issue of when the statements were made would be submitted to the jury under appropriate instructions to disregard any statements made after a given date. (Cf. CPL 710.70.)
The argument was then presented that once it was established that Burns was co-operating with the police in attempting to elicit statements from defendant Odierno the Massiah-Henry rule should be applied retroactively to exclude all statements made to Burns. Neither counsel nor independent research has disclosed any case which has reached such a conclusion.
In People v Cona (49 NY2d 26), the Court of Appeals held that the testimony of an accomplice could not be artificially divided between events occurring before and after the witness became an accomplice, with the statutorily imposed corroboration requirement (CPL 60.22) applicable only for the latter testimony. The rationale for such holding, however, rested on the inherent suspicion accorded such testimony.
People v Knapp (57 NY2d 161) presented a more analogous situation. There, a represented defendant requested an occasional employer who was facing pending felony charges to provide an alibi for him in a murder investigation. The employer agreed to co-operate in the investigation in exchange for a favorable disposition of his own case. At defendant’s murder trial the employer related incriminating statements made to him after the time he agreed to become an informant. The Court of Appeals suppressed said statements (as well as other tainted evidence) because of the violation of defendant’s right to counsel. Since the witness only testified as to statements made to him after he became a police agent, there was no need to comment on the admissibility of defendant’s original request for an alibi (before the agency arose); and none was made.
Neither Massiah nor Henry was intended to automatically convert all informants, including those who had previously acted as such, into government agents. (People v *334 Cardona, 41 NY2d 333; United States ex rel. Milani v Pate, 425 F2d 6, cert den 400 US 867; Paroutian v United States, 370 F2d 631.) In the instant case there was no evidence that Burns, prior to November 24, 1982, directly or indirectly, had been requested to obtain information from Odierno or that he had been placed in geographical proximity to Odierno with instructions to report any incriminating statements to law enforcement officials. Nor is there any evidence that Burns used this information to seek or obtain any benefit for himself. To the contrary, the credible evidence discloses that defendant Odierno freely volunteered the statements to Burns who disclosed them only after he was first contacted by Detective Geary. In the circumstances presented, there is no basis or justification for extending the Massiah-Henry rule to statements made to an informant-witness prior to the time he became a government agent. As the Court of Appeals noted in People v Knapp (52 NY2d 689, 699, n), “there surely is no constitutional protection against misplaced ‘friendships’ ”.
The alleged incriminating statements by defendant Odierno implicated defendant Buono and provided a motive for the homicide. After it was determined that any statements made by Odierno prior to November 24, 1982, would be admissible against him, the court further concluded that such statements could not be effectively redacted in a manner which would avoid adding substantial, if not critical, weight to the People’s case against defendant Buono in a form not subject to cross-examination if defendant Odierno, as anticipated, did not testify. Accordingly, defendant Buono’s motion to sever was granted. (Bruton v United States, 391 US 123, supra.)
At the outset, note was taken of an apparent need for corrective legislation. Prior to September 1, 1982, a defendant could only move to suppress statements involuntarily made within the meaning of CPL 60.45 “[to] a public servant engaged in law enforcement activity or [to] a person then acting under his direction or in cooperation with him”. Effective September 1, 1982, the words in quotations were deleted from CPL 710.20 (subd 3) to eliminate an unwarranted limitation on such right to suppress in view of the general language of CPL 60.45. (See Bella *335 cosa, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 710.20, 1982-1983 Pocket Part, p 197.) In light of the foregoing, the court sees no justification for retaining this limitation in the discovery statute. (CPL 240.20, subd 1, par [a]).
Moreover, if trials are to truly be quests for the truth rather than exercises in gamesmanship, and unnecessary delays and Bruton problems such as occurred in this case are to be avoided, a defendant should be promptly advised of any statement allegedly made by him, or by a codefendant to be tried jointly, to anyone.