THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICK MASULLO, Appellant.

We agree with the finding of the hearing court that the only credible evidence of the date when the New York State Police knew or should have known of the defendant's representation by counsel was at the time of his arrest on April 19, 1985, following his indictment on the instant charges. The Federal Bureau of Investigation (hereinafter FBI) conducted a kidnapping investigation for six weeks prior to the commencement of the New York State Police homicide investigation, which began when the victim's body was discovered. During the FBI investigation, the defendant refused a request to take a polygraph test upon advice of counsel. However, there was no written report of an FBI agent's conversation with counsel, and the New York State Police were not orally informed of the FBI's contact with the defendant's lawyer. The Supreme Court properly found that there was no evidence that the FBI and the New York State Police were working so closely together that they conducted a joint investigation, or that the FBI attempted a subterfuge to protect the New York State Police from obtaining knowledge about the FBI's contact with the defendant's counsel (see, *People v Miles*, 67 NY2d 920, 922; *People v Cunningham*, 60 NY2d 930, 931-932; *People v Fuschino*, 59 NY2d 91, 99; *People v Knapp*, 57 NY2d 161, *cert*

*denied* 462 US 1106; *People v Woolard,* 124 AD2d 763, 764; *see also, People v Bell,* 73 NY2d 153, 162).

Furthermore, even after the close of the FBI investigation, during the subsequent two-year investigation by the New York State Police, the defendant fully cooperated in all aspects of the investigation, and never advised the New York State Police that he was represented by counsel. We agree with the finding of the trial court that there is no credible evidence that the defendant ever asserted a right to counsel during this or any other time, and that until the defendant's arrest, the New York State Police was unaware of the presence of counsel. Thus, with the exception of the one instance when the defendant refused the FBI's polygraph examination, there is no credible evidence that at any time when he was in contact with the New York State Police, his conduct and statements revealed that he intended to place an attorney between himself and the State *(see, People v Skinner,* 52 NY2d 24, 31-32; *see also, People v Bell,* 73 NY2d 153, 160-161, *supra; People v Fridman,* 71 NY2d 845, 846; *People v Roe,* 136 AD2d 140, 144, *affd* 73 NY2d 1004; *People v Hayes,* 127 AD2d 608; *People v Medvecky,* 95 AD2d 921, 922). As a result, the hearing court properly admitted into evidence the recorded statements made by the defendant to a New York State Police informant prior to his indictment and arrest.

While not admissible on direct examination, the statements made by the defendant to a New York State Police investigator after his right to counsel attached were properly used to impeach his trial testimony *(see, Harris v New York,* 401 US 222; *People v Maerling,* 64 NY2d 134, 140-141; *People v Ricco,* 56 NY2d 320, 323, 326; *People v Padron,* 134 AD2d 625).

We have considered the defendant's remaining contentions and find them to be unpreserved for appellate review (CPL 470.05 [2]; *see also, People v De Renzzio,* 19 NY2d 45, 51), without merit, or harmless, in light of the overwhelming evidence of his guilt *(see, People v Crimmins,* 36 NY2d 230). Brown, J. P., Rubin, Kooper and Harwood, JJ., concur.