# CASES

# SUPREME JUDICIAL COURT,

--- --- ---

## PETER SMITH *vs.* EDMUND COFFIN.

The *st.* 1833, *c.* 58, contemplates, that a belief in a Supreme Being is a prere-
quisite to the admission of a witness to testify.    But after he has been ad-
mitted, no inquiry should be allowed as to his religious opinions.

The declarations of a witness are competent evidence of his disbelief of the
existence of a Supreme Being.

When such declarations are proved, the person offered as a witness cannot be
permitted to testify to his belief in a Supreme Being, in order to qualify
himself for admission.

Although, after the proof of such declarations, an honest change of opinion
may be shown, and the proposed witness thereby rendered competent, yet
the testimony of another person, that the witness offered was then, and for
many years next preceding, had been, a *Universalist,* and was an active
member of a *Universalist* society, and has ever been, and then was, a firm
believer in the *Christian* religion, was held to be inadmissible.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J.
presiding.

Replevin, for articles attached as the property of *Richard
Bettes,* by the defendant, a deputy sheriff. To prove property in
himself, the plaintiff offered *Bettes* as a witness. The counsel for
the defendant objected to his being sworn, because *Bettes* was an
atheist and a disbeliever in the existence of a Supreme Being;
and offered *B. Gordon,* as a witness to prove the same. The
plaintiff's counsel objected to the introduction of this testimony,
requesting the Judge to admit *Bettes* to testify himself as to his

Smith *v.* Coffin.

religious belief, and protesting against the testimony to prove the declarations of *Bettes,* unless he was first admitted to testify to his belief in the existence of a Supreme Being. The Judge overruled the objection, and permitted *Gordon* to testify. His testimony is stated in the opinion of the Court. The exceptions then state, that " the plaintiff's counsel offered to prove by said *Richard Bettes,* and by one *Azubah Bettes,* that the said *Richard Bettes* was now, and for many years last past had been, a *Universalist,* and was an active member of a *Universalist* society in *Biddeford,* and had ever been a firm believer in the *Christian* religion, and was now. The Judge ruled that this testimony was inadmissible, and nonsuited the plaintiff." The plaintiff filed exceptions.

The case was argued at the *April* term, 1839.

*Leland,* for the plaintiff, contended, that *Bettes* ought to have been permitted to testify, on the *voire dire,* and explain his religious belief. The public interest requires, that the testimony of witnesses should not be excluded. No one should be allowed to deprive a party of his testimony, by declaring to some one his disbelief in a Supreme Being. The reason of the rule is the same both in criminal and civil proceedings. *Bettes* should have been suffered to show, that he had renounced all atheistical opinions, if he ever entertained such. But certainly, the other witness, offered to prove that *Bettes* was an active member of a religious society, and ever had been, and then was, a firm believer in the *Christian* religion, was admissible. Such testimony was admissible to contradict the testimony of *Gordon,* and to show that he had mistaken or misrepresented the religious opinions of *Bettes.* If such testimony is to be excluded, then if one is to be found who will say that a man offered as a witness is an atheist, his testimony is lost to the party, although all the rest of his neighbors should say that the charge was groundless. 3 *Stark. Ev.* 92; *Paley's Ev. of the Christian Religion,* 61; *Com.* v. *Waite,* 5 *Mass. R.* 261; 7 *Com. Dig.* 461; *Rex* v. *Gilham,* 1 *Esp. R.* 285; *St.* 1833, *c.* 58; *Swift's Ev.* 50; 1 *Wright,* 126.

*A. G. Goodwin,* for the defendant, said, that the *st.* 1833, *c.* 58, left the common law as it found it; that to be a competent witness, a man must believe in the existence of a Supreme Being.

The very definition of an oath implies such belief. Incompetency from this cause, as well as from others, may be proved by others, and the party is not obliged to rely on any statement of such person, on the *voire dire.* When excluded .by other evidence, he cannot be admitted to purge himself by his own testimony. When a confession of the belief of a proposed witness has been proved, it is not competent to disprove it by evidence, that he has made different statements on the subject to others. *Norton* v. *Ladd,* 4 *N. H. Rep.* 444; *Butts* v. *Swartwood,* 2 *Cowen,* 431; *Wakefield* v. *Ross,* 5 *Mason,* 16; 1 *Phil. Ev. c.* 3, § 19, 20; 7 *Conn. R.* 66; *Jackson* v. *Gridley,* 18 *Johns. R.* 98; *Willes' Rep.* 538; *Swift's Ev.* 48; *Peake's Ev.* 267; *Stark. Ev. (Ed. in 2 vol.)* 22, 123; *Curtis* v. *Strong,* 4 *Day,* 51; 1 *Root,* 480; 2 *Root,* 399; 2 *Overton,* 80; 4 *Serg't & R.* 298.

The opinion of the Court was drawn up, and delivered at the *September Term,* 1841, by

EMERY J. — Our statute passed the 21st *February,* 1833, *c.* 58, enacts, "that no person, who believes in the existence of a Supreme Being, shall be adjudged an incompetent or incredible witness, in the judicial courts or in the course of judicial proceedings in this State, on account of his opinions in matters of religion, nor shall such opinions be made the subject of investigation or inquiry."

Here a witness was rejected, because, when he was offered, the defendant's attorney objected to him, because the proposed witness was an atheist, or disbeliever in the existence of a Supreme Being. And one *Benjamin Gordon* was called, who testified, that in a conversation which he recently had with *Richard Bettes,* the offered witness, he repeatedly said, "he did believe that any thing and every thing was God, that that stick, that pair of wheels, *Jordan* mountains, was God, and that every thing like that was God, and that every thing about them was God, and that there was no other God in heaven or earth, but what was in that or them." He, *Gordon,* further stated, in reply to a question put by plaintiff's attorney, that said *Bettes* had, before the time of the conversation above referred to, said that he was an *Universalist,* and that he, the said *Bettes,* was friendly to that class of *Christians,* and also that

he had expressed himself friendly to the religion of the *Unitarian* denomination. This testimony of *Gordon* was not introduced before the plaintiff objected to its introduction ; for the objection against its introduction was interposed before said *Gordon* was sworn. We apprehend that the permission to let in the testimony of *Gordon* was right. "For the opinion and belief of men can be known only by what they have said or written. Their declarations, therefore, either verbal or written, are the proper evidence of their opinions, and are not to be considered in the light of hearsay evidence, but as facts." *Swift's Law of Evidence,* 48.

In the *English* treatises on the law of evidence, it is a general rule, that those infidels, who believe in a God, and that he will punish them in this world, or, as it seems the next, if they swear falsely, may be admitted as witnesses.

*Roscoe's Criminal Evidence,* 96, citing *Omichund* v. *Barker, Willes' R.* 549, and the opinion of *Willes J.* was, that those infidels, who either do not believe in a God, or if they do, do not think that he will either reward or punish them in this world or the next, cannot be witnesses in any case, nor under any circumstances ; for this plain reason, because an oath cannot possibly be any tie or obligation upon them.

It is not yet settled by the *Scotch* law, whether a witness, professing his disbelief in a God, and a future state of reward and punishment, is admissible. "When the point shall arrive," says *Mr. Alison,* "it is well worthy of consideration, whether there is any rational ground for such an exception " — " whether the risk of allowing unwilling witnesses to disqualify themselves, by the simple expedient of alleging that they are atheists, is not greater than that of admitting the testimony of such as make this profession." *Roscoe's Crim. Ev.* 96, 97, citing *Alison Prac. Cr. L. Scotl.* 438.

In *New Hampshire,* in the year 1828, in the case *Norton* v. *Ladd,* 4 *N. H. Rep.* 444, one *John Hunter* was offered as a witness. It was proved, that he had, several times, within a short time before the trial, stated, that he had no belief in the existence of a God. "By the Court. *He who openly and deliberately avows* that he has no belief in the existence of a God, furnishes clear and satisfactory evidence against himself, that he is incapable

of being bound, by any religious tie, to speak the truth, and is unworthy of any credit in a Court of Justice. This witness is proved to have repeatedly avowed such a sentiment. And we have no hesitation *in rejecting him as a person worthy of no credit."* Citing *Butts* v. *Swartwood,* 2 *Cowen,* 431 ; *Jackson* v. *Gridley,* 18 *Johns. R.* 98 ; *Omichund* v. *Barker, Willes' Rep.* 538. The objection was taken to *Hunter's competency.*

In *Jackson, ex dem. Tuttle* v. *Gridley,* 18 *Johns. Rep.* 98, it was held, that one who does not believe in the existence of a God, nor in a future state of rewards and punishments, cannot be a witness in a court of justice, under any circumstances ; and that when it was proved, that a person, offered as a witness, had, within three months before the trial, often, deliberately and publicly, declared his disbelief in the existence of a God, and a future state of rewards and punishments, *he cannot,* on being called to be sworn and objected to, *be admitted to deny those declarations, or to state his recantation of them, and his present belief in a God, &c.*

The like decision was made in *Connecticut,* in 1809, in the case of *Curtis* v. *Strong,* 4 *Day's Cases in Error,* 51.

In *Wakefield* v. *Ross,* 5 *Mason's R.* 16, the counsel for the defendant objected to the admission of two witnesses, father and son, offered, upon the ground of their want of any religious belief; and to establish the fact, a witness was called, who swore that he knew the persons well ; that he had often heard the son say, that he did not believe in the existence of a God, or of a future state. As to the belief of the father, he said that he had heard him declare, that he did not believe in a future state ; that he had read *Tom Paine's* works, and did not know, whether he, the father, believed anything. In answer to a question from the Court, whether the father believed in a state of rewards and punishments, the witness answered only as before, adding, that from the statements of the father he did not seem to believe any thing. It was then suggested, on the part of the plaintiff's counsel, that the father and son might be examined personally as to their belief, for the father might be a *Universalist.* To this suggestion, the Court answered, that the defendant's counsel, who took the objection, were not bound to rely on the testimony of these persons for proof of incompetency. The Court said, "We think these persons are not competent witnesses. Per-

sons, who do not believe in the existence of a God, *or of a future state, or who have no religious belief,* are not entitled to be sworn as witnesses. The administration of an oath supposes, that a moral and religious accountability is felt to a Supreme Being, and is the sanction, which the law requires, upon the conscience of a person, before it admits him to testify." This was in *Rhode Island.*

In *New York,* in the case cited from 18 *Johns. R.* 98, it was considered, that a *witness may be restored to his competency,* on giving satisfactory evidence *of a change of mind,* some time before the trial, so as to repel the presumption, arising from his former declarations of his infidelity, *existing at the time he is called to be sworn.* And it was further held, that, though infants may be examined as to their religious knowledge and belief, it is merely to test their capacity to give evidence, or their understanding of the nature and obligation of an oath. But an adult of sound mind, when called as a witness, and objected to as an infidel, is not to be questioned as to his religious creed.

In *Hunscom* v. *Hunscom,* 15 *Mass. R.* 184, the objection to the competency of the witness offered, was founded upon his professed *disbelief of a future state of existence,* and evidence was offered to prove his repeated declarations of such disbelief. But the Court, *Parker,* Chief Justice, *Thatcher* and *Wilde,* Justices, admitted him to be sworn, and said the objection *went only to his credibility.*

When we consider what changes have been made as to the admissibility of witnesses, we may well deliberate, before we hastily adopt rules, which may lead to consequences of a most disappointing and distressing character. At one time, persons not believing in the *Christian* religion, could not be admitted as witnesses, nor *Quakers,* who would not take an oath.

In the celebrated opinion, delivered by Chief Justice *Willes,* in *Omichund* v. *Barker,* which was not published from his own manuscript till 1799, about fifty years after it was delivered, he says, "Supposing an infidel who believes a God, and that he will reward and punish him in this world, but does not believe a future state, be examined on his oath, as I think he may, and on the other side, to contradict him, a *Christian* is examined, who be-

lieves a future state, and that he shall be punished in the next world as well as this, if he does not swear the truth, I think that the same credit ought not to be given to an infidel as to a *Christian*, because he is plainly not under so strong an obligation." And he quotes *Lord Stairs*, in his *Institutes of the Laws of Scotland*, page 692. "It is the duty of Judges, in taking the oaths of witnesses, to do it in those forms that will most touch the conscience of the swearers, according to their persuasion and custom; and the *Quakers* and fanatics, deviating from the common sentiments of mankind, refuse to give a formal oath, yet if they do that which is materially the same, it is materially an oath."

*Swift*, in his *Law of Evidence*, page 50, says, it may still be a question, whether it would *not originally have* been better, to consider questions of this kind, as going to the credit rather than the competency. *In the conflict of parties, both religious and political, misrepresentations will often take place*, and it will commonly *be safer to rely on the general character for truth, which a man has acquired, by his conduct in society, than on his mere opinions.* The application of the rule, in *Connecticut*, defeated a devise, the party rejected being one of the subscribing witnesses.

In *Walker's Introduction to American Law*, 544, he remarks, that the oath of an atheist, though it wants the religious obligation which belongs to the oath of the believer, has yet the same temporal obligation resulting from the pains and penalties of perjury. For these reasons, he says, it would seem that the want of religious belief ought not to render a witness incompetent, though the jury may properly take it into consideration in weighing his credibility.

It was doubted, in *Ohio*, whether a defect in religious belief should go to the competency or merely to the credibility of the witness. The objection was raised, and it was shewn by third persons, that the witness' creed, so far as collectable from his conversations, was as follows: he said, he did not believe in the existence of a God; but added, that he saw God in trees, bushes, herbage, and every thing he saw; that a man would be punished for falsehood by his conscience, and in this life only; that a man is bound to speak true at all times, and an oath imposes no additional obligation. The Court held, that it was unnecessary to

inquire, whether in *Ohio*, the same rule should prevail as in *England*, for if it should, the witness was competent. *Wright J.* said, "The Court thought his declarations equivalent to an avowal of belief in the existence of a God. He sees him in all created nature." *Easterday* v. *Kilborn*, 1 *Wright*, 345 – 6.

And in *South Carolina*, a person who does not believe in future rewards and punishments, but that our evil deeds will all be punished in this world, and that we shall exist immortal in a future state, exempted from punishment for deeds done in the body, is a competent witness. *Farnandis* v. *Henderson*, in chancery before *Ch. Desaussure, August*, 1827, *South Car. Law Journal*, 202, cited in *Cowen & Hills'* notes to *Phillips' Treatise on the Law of Evidence, part 2d* in the *Supplement, page* 1503.

In this case, we think that our statute contemplates, that the belief in a Supreme Being is a pre-requisite for the admission of a witness; but after he is admitted, no inquiry is to be tolerated as to his religious opinions. Yet as it is calculated to impose, as it were, a penalty of degradation and disgrace upon a citizen, to object to his being admitted as a witness for such disbelief, according to the decisions in *New York* and *Connecticut;* and is against the spirit of our institutions in other respects, inasmuch as it, as it were, condemns without a hearing; (for, according to decided cases, the person excepted against is not permitted to explain ;) therefore, as the law seems to stand thus, courts ought to require proof of clear, open, deliberate, avowals of the disbelief on the part of the proposed witness in the existence of a Supreme Being. It is communicated, that the witness asserted that he was a *Universalist*, who may believe in punishment in this world. And our statute is entitled " An act to secure to witnesses freedom of opinion in matters of religion."

Besides, agreeably to our statute, one conscientiously scrupulous of taking an oath, may be admitted to affirm, which will be under the pains and penalties of perjury. In this there is no appeal to God. It rests on temporal penalties.

In this case, there was no assertion made by the witness that he was conscientiously scrupulous of taking an oath. So that the question came nakedly, whether a person, who was before the Court, and proffered as a witness to take an oath, did believe in

the existence of a Supreme Being. Grateful as we feel to that source of excellence for our own creation; soothed, consoled, and sustained by our deep conviction of our dependence upon him alone; we can scarcely imagine, that *any mortal*, can *seriously avow his disbelief in the existence of a Supreme Being*; yet the Judge was necessarily *to decide upon the competency of the proposed witness, on the evidence offered against him.* Had there been distinct and satisfactory evidence given *of the honest change of* opinion, on the part of the proposed witness, after the proof made by the testimony of *Gordon* of the recent avowal by *Bettes* of his belief, the rejection of the witness could not have been supported. The proposal to prove, by *Azubah Bettes*, that the said *Richard Bettes* was, and for many years last past had been, a *Universalist* and was an active member of a *Universalist* society in *Biddeford*, and had ever been a firm believer in the *Christian* religion, and was, at the time of the examination, the Court think *was not calculated to prove a change of opinion which had been avowed by said Richard in the recent conversation with Gordon;* and therefore, the Judge might direct the nonsuit without hearing the testimony of said *Azubah Bettes.* Whether this person was man or woman, is not stated. If the wife of said *Richard,* we think she could no more be admitted than *Richard* himself.

*Exceptions overruled.*

After reading the foregoing opinion, Judge EMERY remarked, for himself alone, that the *st.* 1833, *c.* 58, entitled " An act to secure to witnesses freedom of opinion in matters of religion," had been passed over eight years. He did not recollect that it had before come in question for decision. Upon the necessarily strong judicial construction which has been made upon the terms of the statute, and the acts of the Judge in deciding, as he must, on the evidence, he said: I can frankly declare, that a much more appropriate title to the act would be, " An act to *deprive* witnesses of freedom of opinion in matters of religion, and to jeopardize the rights of innocent people, who may have a deep interest in the knowledge and testimony of an unwilling witness, perhaps hairbrained and reckless enough *to avow his atheism,* so that the requisite proofs can be had, and so escape examination, when he ought to

be holden to disclose the truth, under such temporal penalties as can be brought to bear upon him." The revised statutes, without retaining the delusive title of the former act, yet continues the objectionable matter, and brings no relief.

The revised statutes, c. 115, § 72, runs thus : " No person, who believes in the existence of a Supreme Being, shall be adjudged an incompetent or incredible witness in any judicial Court, or in the course of judicial proceedings, on account of his opinion in matters of religion, nor shall such opinions be made a subject of investigation or inquiry."