Ricky A. KNAPP, Petitioner–Appellant,

v.

Arthur LEONARDO, Superintendent of the Great Meadow Correctional Facility, Respondent–Appellee.

No. 1502, Docket 93–2532.

United States Court of Appeals, Second Circuit.

Argued April 18, 1994.

Decided Jan. 24, 1995.

John A. Cirando, Syracuse, NY (Patrick J. Haber, Ivette Iza Zenner, D.J. & J.A. Cirando, of counsel), for petitioner-appellant.

Martin A. Hotvet, Asst. Atty. Gen. of State of N.Y., Albany, NY (G. Oliver Koppell, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before: OAKES, KEARSE, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner-appellant Ricky A. Knapp appeals from a judgment entered July 7, 1993 in the United States District Court for the Northern District of New York, Neal P. McCurn, *Judge,* that denied Knapp's petition for a writ of habeas corpus, and from an order entered August 17, 1993 in that court which denied reconsideration of the court's judgment.

Knapp's habeas petition sought to overturn his state court conviction for second degree manslaughter in violation of N.Y.Penal Law § 125.15(1) on the grounds that: (1) the trial court should have granted his request for a change of venue due to the prejudicial effects of extensive pretrial publicity; (2) potential jurors should have been examined *in camera* before the retrial to prevent the media from publicizing the voir dire and further prejudicing public opinion against Knapp; (3) the retrial should not have been held in a church facility; (4) his retrial violated the Double Jeopardy Clause; (5) evidence obtained in violation of Knapp's right to counsel should have been suppressed; (6) there was insufficient evidence to sustain Knapp's conviction; (7) the trial court denied him due process of law and a fair trial by refusing to charge the jury on the lesser included offense of criminally negligent homicide; (8) the court gave erroneous instructions in response to questions posed by the jury; and (9) Knapp's sentence as a persistent felony offender following retrial was vindictive and otherwise illegal. He asserts most of these grounds on this appeal, as well.

We conclude that Knapp is not entitled to habeas relief, and accordingly affirm the judgment of the district court and its order denying reconsideration of that judgment.

## Background

### A. *The Events at Issue.*

Knapp was arrested and indicted in January 1978 on two counts of second degree murder stemming from the December 9, 1977 death of Linda Jill Velzy, a student at

the State University College of Arts and Sciences at Oneonta, New York. After Velzy was reported missing by her roommate, city and state police interviewed over 100 people, including Knapp, in connection with Velzy's disappearance. During the initial police interview, Knapp agreed to submit to a polygraph test at the request of police investigators. However, John Owen, an attorney who was representing Knapp on unrelated sodomy and unlawful imprisonment charges, advised Knapp not to take the test, and also directed the police either to arrest Knapp or cease questioning him.

Although the police ceased questioning Knapp directly, they continued to investigate Knapp through an informant named Arthur Hitt, who owned a lumber yard where Knapp occasionally worked. Hitt was facing criminal charges for third degree robbery. In an apparent attempt to ameliorate his situation, Hitt told state police investigators that Knapp had asked him to support an alibi that Knapp had been with Hitt until 8:00 p.m. on December 9. On December 21, Hitt, accompanied by counsel, agreed to a plea bargain on the pending robbery charge that was conditioned upon Hitt's cooperation in the Velzy investigation and upon that cooperation leading to the arrest of at least one person criminally responsible for Velzy's disappearance. Hitt's attorney later testified that Knapp was the target of the investigation.

Over the next ten days, Hitt made several telephone calls to Knapp that were recorded by police investigators. In two recorded conversations, Knapp reiterated his request that Hitt support Knapp's alibi for the night of December 9. On December 31, in an unrecorded conversation, Knapp allegedly admitted to Hitt that he had murdered Velzy. According to Hitt's trial testimony, Knapp revealed that he had picked up Velzy, who was hitchhiking, and had engaged her in a sexual encounter. Then, Knapp continued, while driving back to town, he and Velzy had argued, and she had jumped out of the car and fell semiconscious in a ditch. Knapp allegedly stated that he had then placed Velzy in the back seat of his car, and had subsequently killed her by hitting her in the throat with his fist three times. In that same conversation, Knapp requested Hitt's assistance to move Velzy's body to Hitt's logging site.

On January 1, 1978, Hitt informed the police of Knapp's scheme to move Velzy's corpse. On the basis of Hitt's information, the police surveilled Hitt's logging site to await the arrival of Knapp and Hitt with Velzy's body. When Knapp was observed dragging Velzy's frozen corpse to a grave that had been prepared for her, the police announced their presence and arrested Knapp. Several police officers at the scene later testified that when arrested, Knapp exclaimed: "I am sorry; I am sorry. I killed her. I am no good. Please shoot me."

Knapp was taken to a nearby state police station, where he waived his right to counsel, made a full confession of his involvement in the disappearance and death of Velzy, and signed a typewritten copy of the confession. Based upon Hitt's sworn testimony concerning admissions that Knapp had made to Hitt, the police then obtained a warrant to search the car Knapp had driven on December 9. The search uncovered a contact lens matching one missing from Velzy's right eye, wood chips similar to a chip found in Velzy's pubic hair, a strand of blonde hair consistent with Velzy's hair, animal hairs consistent with hair found on Velzy's clothing, and fragments of Christmas decorations which were identical to others found in the sheet in which Velzy's body was wrapped.

B. *The First Trial.*

In January 1978, an Otsego County Grand Jury returned an indictment charging Knapp with two counts of murder in the second degree. Count one charged Knapp with intentional murder in violation of N.Y.Penal Law § 125.25(1), alleging that Knapp beat Velzy to death by punching her in the head and neck. Count two charged Knapp with reckless murder in violation of N.Y.Penal Law § 125.25(2), alleging that Knapp created a grave risk of death by failing to transport Velzy for medical care after she injured herself in attempting to exit his car.

The trial court denied Knapp's pretrial motions to suppress the statements of guilt and remorse uttered by Knapp at the scene

of his arrest, Knapp's admissions of guilt to Hitt, Knapp's signed confession, and the various items of physical evidence seized from Knapp's car. At trial, Hitt testified with respect to his conversation with Knapp on December 31, but his taped conversations with Knapp were not introduced in evidence. Knapp testified that it was in fact Hitt who had the sexual encounter with Velzy, killed her, and supplied a shovel, sheet, and bulldozer for Velzy's burial.

At the conclusion of the trial, the jury was instructed that the two murder charges were mutually exclusive. After deliberation, the jury acquitted Knapp of intentional murder, but convicted him of reckless murder. He was sentenced to twenty-five years to life imprisonment.

On appeal, the Appellate Division held that the typewritten confession had been obtained in violation of Knapp's right to counsel under the state constitution. *People v. Knapp*, 82 A.D.2d 971, 971, 440 N.Y.S.2d 416, 417 (3d Dep't 1981) (mem.) (*"Knapp I"*), *rev'd and remanded*, 57 N.Y.2d 161, 441 N.E.2d 1057, 455 N.Y.S.2d 539 (1982). In light of the overwhelming evidence of guilt, however, the Appellate Division held that the written confession was surplusage and affirmed the conviction on a harmless error analysis. *Id.*

The Court of Appeals, however, reversed and remanded for a new trial. *People v. Knapp*, 57 N.Y.2d 161, 175–76, 189, 441 N.E.2d 1057, 1062, 1070, 455 N.Y.S.2d 539, 544, 552 (*"Knapp II"*), reiterating the Appellate Division's determination that there had been a violation of Knapp's right to counsel as provided by the New York State constitution, but declining to view the error as harmless. *Id.* at 173, 441 N.E.2d at 1060–61, 455 N.Y.S.2d at 542–43. The court found that by December 31, Hitt had been acting as an agent for the police, and that Knapp's admissions of guilt to Hitt on that day were therefore unlawfully obtained in contravention of Owen's direction to the police to cease questioning Knapp. *Id.* at 173, 441 N.E.2d at 1061, 455 N.Y.S.2d at 543. Consequently,

the court reasoned, not only should Knapp's admissions to Hitt have been suppressed, but also the physical evidence found in Knapp's car that was seized pursuant to a warrant based upon Hitt's testimony. *Id.* at 173–74, 441 N.E.2d at 1061, 455 N.Y.S.2d at 543. The court determined that the typewritten confession should also have been suppressed because it was obtained from Knapp outside the presence of counsel despite Owen's admonition to the police to stop questioning Knapp. *Id.* at 174, 441 N.E.2d at 1061, 455 N.Y.S.2d at 543. The case was remanded for "further proceedings on the second count in the indictment." *Id.* at 176, 441 N.E.2d at 1062, 455 N.Y.S.2d at 544.

## C. *The Second Trial.*

Because of renovations being conducted on the Otsego County Courthouse, the second trial was held in the church hall of a local Roman Catholic church. There was substantial publicity both before and during Knapp's retrial. Most significantly, the publicity included information about the confessions and other evidence that the Court of Appeals had ordered suppressed at the second trial. Extensive voir dire proceedings resulted in the disqualification of eighty-three percent of the 1,417 members of the jury pool.[1]

Although *Knapp II* prohibited the trial court from admitting Knapp's confession, his admissions to Hitt, or the evidence seized from Knapp's car, the other evidence from the first trial was admitted at the retrial. In addition, Robert Lee Keator, who did not testify at the first trial, testified that Knapp—who was Keator's cousin and had been imprisoned in the same cell block with Keator in March 1978—had admitted to Keator that he had beaten Velzy. Knapp allegedly told Keator that after the beating he had felt for a pulse but found none, and had placed Velzy's body in the trunk of his car.

In accordance with the direction of *Knapp II*, Knapp was charged at the second trial with reckless murder under § 125.25(2). The prosecution sought to prove the reckless

---

1. Knapp asserts that eighty-three percent of the jury pool was dismissed for prejudice. The government disputes this figure, pointing out that numerous jurors were dismissed for other reasons, such as conflicting social and business commitments and an inability to understand and apply legal concepts.

murder count at the second trial by establishing that Velzy had been knocked unconscious, either because Knapp struck her or as a result of her falling or jumping from Knapp's moving car, and that Knapp had failed to transport her for medical care. The jury acquitted Knapp of reckless murder, but convicted him of the lesser included offense of second degree manslaughter in violation of N.Y.Penal Law § 125.15(1). Although he was convicted of the lesser charge, Knapp was sentenced as a persistent felony offender[2] pursuant to N.Y.Penal Law § 70.10 to an enhanced sentence of twenty-five years to life imprisonment—the same sentence he received for his initial conviction.

On direct appeal, Knapp argued that his conviction should be reversed for the same reasons he now presents in his habeas petition, and the Appellate Division affirmed his conviction. *People v. Knapp,* 113 A.D.2d 154, 495 N.Y.S.2d 985 (3d Dep't 1985) (*"Knapp III"*).[3] The Court of Appeals denied review, *People v. Knapp,* 67 N.Y.2d 945, 494 N.E.2d 123, 502 N.Y.S.2d 1038 (1986), and the Supreme Court denied certiorari. *Knapp v. New York,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 97 (1986).

### D. *The Proceedings in Federal Court.*

On October 4, 1988, Knapp filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of New York, asserting the grounds for relief summarized earlier in this opinion. The case was referred to Magistrate Judge Ralph W. Smith, who recommended that the petition be denied in a detailed report-recommendation. *Knapp v. Leonardo,* No. 88–CV–1034 NPM, slip op. (N.D.N.Y. July 7, 1993) (*"Knapp IV"*). The district court approved the report-recommendation and entered judgment dismissing Knapp's petition. The district court also de-

nied Knapp's subsequent motion for reconsideration.

This appeal followed.

### Discussion

We note at the outset that under 28 U.S.C. § 2254(d), in the absence of exceptional circumstances that are not presented in this case, the factual findings of trial and appellate state courts are presumed to be correct in federal habeas proceedings unless they are not "fairly supported by the record." 28 U.S.C. § 2254(d)(8); *see also Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (per curiam). Further, a petitioner must establish by "convincing evidence" that the state court's factual findings are erroneous. § 2254(d); *see also Senna v. Patrissi,* 5 F.3d 18, 20 (2d Cir.1993) (per curiam); *Ventura v. Meachum,* 957 F.2d 1048, 1054 (2d Cir.1992). Questions of law, by contrast, are reviewed *de novo. Green v. Scully,* 850 F.2d 894, 900 (2d Cir.), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988).

Knapp argues on this appeal all of the issues presented in his habeas petition except his claims that: (1) the media should have been excluded from the voir dire examination of the jurors at his retrial; and (2) the trial court responded incorrectly to several questions posed to that court by the jury during its deliberations at Knapp's second trial. (Knapp does address the latter point, however, in connection with his argument that the trial court improperly declined to charge the lesser included offense of criminally negligent homicide.) Accordingly, we do not discuss these issues, which in any event were correctly resolved (adversely to Knapp) by Magistrate Judge Smith. *See Knapp IV* at 7–8, 23–24.

We turn to the consideration of Knapp's contentions.[4]

---

**2.** Knapp was found by the trial court to be a persistent felony offender because of a 1970 conviction for forgery and a 1974 conviction for attempted sexual abuse.

**3.** In addition to the claims presented in his habeas petition, Knapp unsuccessfully took exception on his direct appeal to certain statements made

by the prosecutor during summation. *See Knapp III,* 113 A.D.2d at 161, 495 N.Y.S.2d at 990.

**4.** Prior to oral argument, Knapp moved to submit a pro se brief and supplemental appendix. We denied the motion. After oral argument, he moved for reconsideration of that denial. We grant his motion for reconsideration, and accordingly have considered: (1) the additional

## A. *Impartiality of the Jury.*

Knapp argues that in light of the extensive pretrial publicity, the trial court's refusal to change venue deprived him of his right to a fair trial by an impartial jury in violation of the Sixth Amendment and due process. He contends that pretrial publicity utterly corrupted the trial atmosphere, as evidenced by the disproportionate number of jurors (83%) allegedly disqualified from the jury pool because they had prejudged Knapp's guilt. *See supra* note 1.

Under § 2254(d), the state court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial. *See Wheel v. Robinson,* 34 F.3d 60, 65 (2d Cir.1994) (trial court's findings on jury bias entitled to § 2254(d) presumption of correctness). Indeed, the Supreme Court has made it clear that "the trial court's findings of impartiality [may] be overturned only for 'manifest error.'" *Patton v. Yount,* 467 U.S. 1025, 1031, 104 S.Ct. 2885, 2889, 81 L.Ed.2d 847 (1984) (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)).

■ The Court has also recognized that in the era of modern communications, it is nearly impossible to find a juror who has not been exposed to some measure of information regarding a highly publicized case:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin,* 366 U.S. at 723, 81 S.Ct. at 1642–43 (citations omitted). In other words, the Constitution does not require ignorant jurors, only impartial ones. *See Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

■ Knapp has not cited, nor does the record reveal, any evidence of actual prejudice that might support his contention of jury bias. We note in this regard that Knapp's attorney declined to question most of the potential jurors about the effect of pretrial publicity because he feared that his questions (and the jurors' potential responses) could infect other jurors and might be reported by the press covering the voir dire proceedings. He did, however, question three veniremen about the pretrial publicity. All three maintained that they had only vague recollections of the press coverage, and that nothing they might remember would preclude their reaching a fair judgment based upon the evidence presented at trial.

■ Jury bias can be established only if a habeas petitioner demonstrates that "prejudice [wa]s 'manifest'." *Irvin,* 366 U.S. at 724, 81 S.Ct. at 1643 (collecting cases). That is, the petitioner must show the "'actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Id.* at 723, 81 S.Ct. at 1643 (quoting *Reynolds v. United States,* 98 U.S. 145, 157, 25 L.Ed. 244 (1878)); *see also Murphy,* 421 U.S. at 800, 95 S.Ct. at 2036 (defendant must show actual existence of prejudice to overcome juror's assurances of impartiality).

Knapp relies heavily upon *Irvin* to support his contention that we should find prejudice in this case. In *Irvin,* the Supreme Court overturned a state court conviction because extensive pretrial publicity had caused a "clear and convincing" build-up of prejudice among the jurors. *Id.* at 725, 81 S.Ct. at 1644. In reversing Irvin's conviction and requiring a new trial, the Court noted that the "'pattern of deep and bitter prejudice' shown to be present throughout the community" was reflected by the fact that eight of the twelve jurors actually selected admitted to a preconception that the defendant was guilty. *Id.* at 727, 81 S.Ct. at 1645 (quoting local newspaper description of local sentiment); *cf. Rideau v. Louisiana,* 373 U.S.

arguments presented in his pro se brief that (a) the second trial should not have been held in a church hall, and (b) he was improperly sentenced; and (2) the claim, presented only in

Knapp's pro se submission, that evidence admitted at his second trial should have been suppressed.

723, 725–26, 83 S.Ct. 1417, 1418–19, 10 L.Ed.2d 663 (1963) (reversing conviction when trial court refused to change venue from district in which defendant's jailhouse confession was filmed and broadcast on local television).

By contrast, Knapp has only cited newspaper articles about his case, and has not provided any evidence that even suggests the existence of a deep-rooted pattern of prejudice in Otsego County. *See Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977) ("under *Murphy*, extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair"); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 554, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683 (1976) ("pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial"). Further, as we have noted, those jurors who were questioned about the effect of the pretrial publicity responded that any effect was negligible. Finally, the trial judge admonished the venire to ignore any current publicity about the case. In sum, the jury that convicted Knapp was adequately impartial to satisfy constitutional standards.

**B. *Conduct of Knapp's Second Trial in a Church Hall.***

■ Over the objections of both parties, Knapp's retrial was held in a Catholic church hall in Cooperstown, New York, due to renovations being performed on the Otsego County Courthouse. Knapp contends that he was thereby denied his right to a public trial and a fair trial. We are not persuaded that the conduct of the trial at this location constituted constitutional error requiring reversal of Knapp's conviction.

■ It is clear that a defendant has a Sixth Amendment right to a public trial. *See Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984). "Openness ... enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press–Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984). In this case, the state court made a factual finding that the location of the trial did not restrict the public's access to Knapp's retrial, *see Knapp III*, 113 A.D.2d at 159, 495 N.Y.S.2d at 989, and Knapp has not presented any evidence that this determination was erroneous. *See* 28 U.S.C. § 2254(d).

Nor is any showing made that the location of the trial rendered it unfair. The Appellate Division noted that in addition to its use for Knapp's trial, the church hall "was used for a number of secular purposes." *Knapp III*, 113 A.D.2d at 159, 495 N.Y.S.2d at 989. Nonetheless, it was undoubtedly imprudent to hold Knapp's trial at this location, particularly over the objection of the parties. No showing has been made, however, that constitutional error resulted which prejudiced Knapp. *See id.* at 160, 495 N.Y.S.2d at 989 ("It is as likely that the jurors would be influenced to render a just and honest verdict as that they would somehow be prejudiced against defendant. Even traditional courtrooms are not devoid of religious symbols and artifacts and both jurors and witnesses are traditionally sworn with the phrase 'so help you God.' "). Absent a demonstration that a constitutional error, if any, affected the factfinding process at trial, there is no basis to accord habeas relief. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680–81, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *Latine v. Mann*, 25 F.3d 1162, 1167 (2d Cir.1994).

**C. *Double Jeopardy.***

■ Knapp's double jeopardy argument is predicated solely upon the Supreme Court's decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 521, 110 S.Ct. at 2093 (footnote omitted). Knapp maintains that the same "conduct" underlies both the intentional murder charge of which he was acquitted at the first trial, and the reckless murder charge on which he was tried at the second

trial. While Knapp's petition was pending below, however, the Supreme Court overruled *Grady*. *See United States v. Dixon,* — U.S. —, —, —, 113 S.Ct. 2849, 2860, 2864, 125 L.Ed.2d 556 (1993).[5]

Accordingly, under pre-*Grady* and post-*Dixon* decisions in the Supreme Court and this circuit, the Double Jeopardy Clause is not violated as long as the two prosecutions of Knapp each required proof of an element of which the other prosecution did not require proof. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Liller,* 999 F.2d 61, 63 (2d Cir.1993). The *Blockburger* test is easily satisfied in this case. A conviction for intentional murder requires proof that the defendant's "conscious objective" is to cause death or to knowingly engage in murder. N.Y.Penal Law § 15.05(1). By contrast, recklessness—whether for reckless murder or for reckless manslaughter—requires proof that the defendant "is aware of and consciously disregards a substantial and unjustifiable risk" that death will occur. *Id.* § 15.05(3). Because the mental states of these crimes differ, no double jeopardy violation resulted from Knapp's retrial in connection with Velzy's death, even though there was "an overlap in proof" between the first trial and the retrial. *See United States v. Felix,* 503 U.S. 378, —, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25 (1992).

### D. *Suppression of Evidence.*

■ Knapp argues pro se, *see supra* note 4, that Velzy's body, the police officers' testimony regarding what they saw at the time of Knapp's arrest, and Knapp's spontaneous utterance at that time should have been suppressed as "fruit of the poisonous tree." His claim is that these additional suppressions were required, as well as those mandated by the New York Court of Appeals in *Knapp II,* as a result of the violation of Knapp's right to

counsel under state constitutional law determined in *Knapp II,* 57 N.Y.2d at 173, 441 N.E.2d at 1060, 455 N.Y.S.2d at 542.

Knapp explicitly premises this contention upon the adjudicated violation of the New York State constitution. Federal habeas corpus, however, is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, this claim provides no basis for habeas relief.

### E. *Sufficiency of the Evidence.*

■ We note the "'very heavy burden'" placed upon a defendant challenging the sufficiency of the evidence underlying his conviction. *See United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir.1993) (quoting *United States v. Ragosta,* 970 F.2d 1085, 1089 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992)). To succeed, Knapp must demonstrate that "viewing the evidence in the light most favorable to the government, ... no 'rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.'" *United States v. Jones,* 16 F.3d 487, 490 (2d Cir.1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *see also United States v. Gordon,* 987 F.2d 902, 906 (2d Cir. 1993) (inferences must be drawn in government's favor); *United States v. Lindsay,* 985 F.2d 666, 672 (2d Cir.) (same), *cert. denied,* — U.S. —, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993); *United States v. Pitre,* 960 F.2d 1112, 1120 (2d Cir.1992) (same).

Knapp contends that the state did not produce enough evidence for any rational trier of fact to conclude that he was aware of and consciously disregarded an unjustifiable risk to Velzy's health (i.e., that Velzy was alive after the initial injury to her head and would have survived long enough for medical

---

**5.** Knapp mistakenly contends in his reply brief that he is entitled to rely on *Grady,* despite its overruling in *Dixon,* because *Grady* was good law when Knapp's habeas petition was filed and when this case was decided in the district court. He is factually mistaken as to the latter assertion. *Dixon* was decided on June 28, 1993; the district court order that approved Magistrate Judge

Smith's report-recommendation was issued on July 7, 1993, as was the judgment from which this appeal is taken. In any event, a federal habeas petitioner does not "ordinarily have any claim of reliance on past judicial precedent as a basis for his actions." *Lockhart v. Fretwell,* — U.S. —, —, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

attention to have assisted her.) *See* N.Y.Penal Law § 125.15(1) (manslaughter in second degree occurs when actor "recklessly causes the death of another person").[6]

At the retrial, both sides presented expert witnesses who provided conflicting testimony as to when Velzy died. Knapp's expert testified that Velzy died very soon after the head injuries were inflicted and would have died even if Knapp had transported her to a medical facility. Keator also testified that Knapp had told him that Knapp felt for Velzy's pulse but could not find it, suggesting that Velzy died from the blows to her head and throat. The prosecution's expert, by contrast, testified that Velzy died from complications caused from a fractured skull, and that although she was probably rendered unconscious by the blow, she might have survived with prompt medical care.

█ In our view, a rational jury could reasonably have concluded beyond a reasonable doubt, on the basis of this evidence, that Velzy did not die instantly, and that Knapp was aware of the risk to Velzy when he did not seek immediate medical attention for her. While there was evidence to sustain Knapp's contention that Velzy died instantly, the jury was free to credit the expert testimony of the prosecution's witness and to discount Knapp's statements to Keator. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793 (where historical facts support conflicting inferences, federal habeas court must presume that conflicts were resolved in favor of prosecution). Accordingly, we agree with the district court's rejection of Knapp's sufficiency claim.

F. *Lesser Included Offense.*

█ Knapp argues that the trial court improperly refused to instruct the jury on the lesser included offense of criminally neg-

ligent homicide.[7] Neither the Supreme Court nor this circuit has decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition. *See Rice v. Hoke,* 846 F.2d 160, 164–65 (2d Cir.1988). We need not resolve the issue in this case, however, because the trial court properly concluded that the evidence in this case did not warrant a charge on criminally negligent homicide. *Cf. Campaneria v. Reid,* 891 F.2d 1014, 1022–23 (2d Cir.1989) (charge on lesser included offense not warranted by evidence), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991); *Rice,* 846 F.2d at 165–66 (same).

The New York rule is clear that a trial court may

> submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense *but did not commit the greater.* If there is no reasonable view of the evidence which would support such a finding, the court *may not* submit such lesser offense.

N.Y.Crim.Proc.Law § 300.50(1) (emphasis added); *see also People v. Glover,* 57 N.Y.2d 61, 63, 439 N.E.2d 376, 377, 453 N.Y.S.2d 660, 661 (1982) (per curiam); *People v. Bova,* 122 A.D.2d 798, 799, 505 N.Y.S.2d 885, 886 (2d Dep't), *appeal denied,* 68 N.Y.2d 810, 499 N.E.2d 875, 507 N.Y.S.2d 1026 (1986).

The only reasonable view of the evidence in this case is that Knapp perceived, but consciously disregarded, a grave risk of death from leaving Velzy unattended on a winter night after she sustained the fatal head injuries. We agree with the Appellate Division that "[i]t is inconceivable that a per-

---

6. According to N.Y.Penal Law § 15.05(3):

> A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

7. N.Y.Penal Law § 15.05(4) provides that:

> A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

son could fail to perceive the risk of leaving an unconscious person unattended in an isolated location on a winter night." *Knapp III,* 113 A.D.2d at 165, 495 N.Y.S.2d at 993. Thus, it would have been improper for the trial court to instruct on criminally negligent homicide, *see People v. Jenkins,* 176 A.D.2d 348, 349, 574 N.Y.S.2d 585, 586 (2d Dep't 1991) (mem.), *appeal denied,* 79 N.Y.2d 858, 588 N.E.2d 765, 580 N.Y.S.2d 730 (1992); *People v. Barclift,* 140 A.D.2d 615, 616, 528 N.Y.S.2d 656, 658 (2d Dep't 1988) (mem.); *Bova,* 505 N.Y.S.2d at 886–87, and the district court properly rejected this argument in Knapp's habeas petition.

### G. *Sentencing Issues.*

Knapp was initially convicted of murder in the second degree, a class A–I felony, and sentenced to twenty-five years to life in prison. *See* N.Y.Penal Law § 70.00(2)(a), (3)(a)(i). Upon retrial, Knapp was charged and convicted of the lesser offense of manslaughter in the second degree, a class C felony, which carries a fixed sentence of no more than fifteen years imprisonment. N.Y.Penal Law § 70.02(3)(b). Based upon Knapp's prior convictions, however, the trial court found him to be a persistent felony offender, and pursuant to N.Y.Penal Law § 70.10, imposed a Class A–I felony sentence of twenty-five years to life.[8] *See Knapp III,* 113 A.D.2d at 158, 495 N.Y.S.2d at 988.

 Knapp argues that sentencing him as a persistent felony offender only at the second trial resulted in a vindictive penalty for exercising his right to appeal. The district court found that the trial court's sentencing was not vindictive, and we agree.

 A harsher sentence following a retrial violates due process when it is dispensed "with the purpose of punishing a successful appeal." *Alabama v. Smith,* 490 U.S. 794, 798, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989) (holding that higher sentence imposed after the withdrawal of guilty plea was not entitled to presumption of vindictiveness); *cf. United States v. Chagra,* 957 F.2d 192, 195–96 (5th Cir.1992) (identical sentence after conviction on lesser charge not vindictive).

An identical, not harsher, sentence was imposed in this case. Intentional murder and reckless murder both are class A–I felonies that carry a sentence of twenty-five years to life. Thus, it would have been superfluous to classify Knapp as a persistent felony offender under § 70.10 at the first trial. Once he was convicted of a lesser included offense, however, it was appropriate to invoke § 70.10. The persistent felony offender classification was particularly suitable in this case in view of Knapp's egregious criminal history, as the district court properly determined. *See Knapp IV* at 30; *see also United States v. Perez,* 904 F.2d 142, 147 (2d Cir.) (defendant's criminal history is a "wholly appropriate, non-vindictive" consideration at sentencing), *cert. denied,* 498 U.S. 905, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990).

Knapp asserts in his pro se brief, *see supra* note 4, that he was not properly sentenced as a persistent felony offender. He

---

8. N.Y.Penal Law § 70.10 states in pertinent part:
 1. Definition of persistent felony offender.
 (a) A persistent felony offender is a person ... who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and (c) of this subdivision.
 (b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in any other jurisdiction, provided:
 (i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor; and
 (ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony; and
 (iii) that the defendant was not pardoned on the ground of innocence.

 ....
 2. Authorized Sentence. When the court has found ... that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment [otherwise] authorized ... for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A–I felony. In such event the reasons for the court's opinion shall be set forth in the record.

contends that: (1) his guilty plea to the forgery predicate felony was not knowing and voluntary; (2) his probationary sentence for that felony was unjustly vacated, as a result of which he served prison time that arguably exceeded one year and thus was improperly deemed to meet the requirement of N.Y.Penal Law § 70.10(b)(1), *see supra* note 8; but (3) in fact he did not serve prison time in excess of one year on that conviction, thereby disqualifying him to be sentenced as a persistent felony offender under § 70.10. We reject these contentions substantially for the reasons carefully stated in the report-recommendation of Magistrate Judge Smith. *See Knapp IV* at 25–28; *see also Knapp III,* 113 A.D.2d at 166–67, 495 N.Y.S.2d at 993–94. We note in addition that the second and third claims raise issues of state law that provide no basis for federal habeas relief.

### Conclusion

The judgment of the district court and its order denying reconsideration are affirmed.

OAKES, Senior Circuit Judge, dissenting:

I am required to dissent. This was an emotionally super-charged retrial of a murder case in a rural area of New York State, where 83 percent of the 1417 members of the jury pool had been disqualified for cause, many as a result of prejudicial pretrial publicity involving evidence ordered suppressed by the New York Court of Appeals after the first trial. *People v. Knapp,* 57 N.Y.2d 161, 441 N.E.2d 1057, 455 N.Y.S.2d 539, *rearg. denied,* 58 N.Y.2d 779, 445 N.E.2d 219, 459 N.Y.S.2d 1030 (1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2452, 77 L.Ed.2d 1332 (1983). Particularly in light of these circumstances, I think it deprived the petitioner of his constitutional right to a fair trial to try the case in a church hall containing "holy pictures" and other religious artifacts, including but not necessarily limited to a crucifix along the path from the makeshift courtroom to the jury room.

That the trial was held in this location, as opposed to a high school gymnasium or other wholly secular meeting hall, seems to me constitutional error. It is not insignificant that *both* prosecution and defense objected to holding the trial in the church hall. And it is worth noting that the subject matter of the trial was not some relatively minor offense, such as credit card fraud or tax evasion, but, rather, that most emotionally charged offense—murder—one indeed involving a violation of the Sixth Commandment, "Thou shalt not kill." [1]

The weakness of the rationalization on direct appeal for upholding the constitutionality of trial in such a place—followed without amplification by the panel majority in our habeas review—is glaring. The opinion of the Third Department, while conceding that "the church hall may not have been an ideal place for the trial"—it is hard to imagine anyone suggesting that it would have been ideal—goes on to say that "[e]ven traditional courtrooms are not devoid of religious symbols and artifacts and both jurors and witnesses are traditionally sworn with the phrase 'so help you God.'" *People v. Knapp,* 113 A.D.2d 154, 160, 495 N.Y.S.2d 985, 989 (3rd Dept.1985), *appeal denied,* 67 N.Y.2d 945, 494 N.E.2d 123, 502 N.Y.S.2d 1038 (1986), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 97 (1986). The majority opinion in this case, after quoting the immediately preceding language in support of its decision, then states that "[a]bsent a demonstration that a constitutional error, if any, affected the factfinding process at trial, there is no basis to accord habeas relief." Majority op. at 178. It is beyond my ken how a defendant could, under any circumstances, demonstrate an effect of this sort upon the factfinding process at trial. This is especially so when here the County Court "did not allow defense counsel to develop the record fully regarding the number, description and

---

1. The Ten Commandments appear in two different places in the Old Testament, Exodus 20:1–17 and Deuteronomy 5:6–21. "Thou shalt not kill" is the Sixth Commandment in Exodus, and the Fifth Commandment in Deuteronomy. Most Protestant, Anglican and Orthodox Christians and Jews follow the Exodus version, while Lutherans and Roman Catholics follow the Deuteronomic version. *See The Encyclopedia Americana International Edition,* Vol. 26 at 469–70 (1992).

location of religious artifacts." *Knapp*, 113 A.D.2d at 160, 495 N.Y.S.2d at 989.

I do not know where the Third Department, or our court in relying upon the language of the Third Department, has obtained the notion that "[e]ven traditional courtrooms are not devoid of religious symbols and artifacts." There is no evidence in the record as to this. I have tried in vain to recall a courtroom that I have been in which contains religious symbols, pictures, or artifacts, or a courthouse the hallways of which are thus furnished. The closest I have been able to come—and it is not very close—is that the reverse side of the Great Seal of the United States, which is rarely, if ever, seen in a courtroom, bears the Latin motto "Annuit Coeptis," meaning "He (God) has favored our undertakings." And not only is this motto in Latin, and unfamiliar Latin at that, but it does not even contain the word "God"; it, rather, conveys the concept implicitly. This abstruse phrase, carried on the reverse of the familiar Seal, can hardly be said to have the immediacy of impact—it is not instinct with the threat of religious imprecations—that religious artifacts so readily evoke. A great many people, and I say this with full respect, may experience substantial internal pressure in response to religious pictures and artifacts. I do not believe we should place on the defendant the burden—one which I suspect would usually, if not always, be impossible to meet—of "demonstrating" this affirmatively. Our Founding Fathers thought church and state should be kept separate. The same holds true for church and courtroom.

I think a similar argument can be made in reference to the second point relied on both by the Appellate Division in affirmance and by the majority in denial of the petition for habeas, namely that "both jurors and witnesses are traditionally sworn with the phrase 'so help you God.'" 113 A.D.2d at 160, 495 N.Y.S.2d at 989; majority op. at 178. First, there is no such requirement in the oath administered to jurors or witnesses in New York, nor has there been for some time. *See* N.Y.C.P.L.R. § 2309(b) and practice commentary C2309:2 (McKinney 1991) (oath or affirmation shall be administered in accor-

dance with person's religious or ethical beliefs). Second, while oaths have not been abolished, either by statute or constitutionally, theological belief has long been ruled out as a measure of a person's capacity or competency to act as a juror or witness. *See* 6 *Wigmore on Evidence* § 1828, at 429–32 (Chadbourn Rev.1976); *cf. Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1960) (holding that requiring belief in God as a requirement for holding public office is unconstitutional); *Smith v. Coffin*, 18 Me. 157 (1841) (Emery, J.) (condemning state statute requiring witness to believe in "the existence of a Supreme Being"). We have come a long way, it seems to me, from the days when a judge could address a witness by saying,

> I charge thee, therefore, as thou will answer it to the Great God, the judge of all the earth, that thou do not dare to waver one tittle from the truth, upon any account or pretence whatsoever; ... for that God of Heaven may justly strike thee into eternal flames and make thee drop into the bottomless lake of fire and brimstone, if thou offer to deviate the least from the truth and nothing but the truth.

Jefferies, *C.J.*, in *Lady Lisle's Trial*, 11 How. St.Tr. 298, 325 (1685) (quoted in 6 *Wigmore*, *supra*, § 1816 at 383).

In conclusion, I agree emphatically with the statement of Judge Harry Edelstein in *People v. Rose*, 82 Misc.2d 429, 368 N.Y.S.2d 387, 391 (County Court 1975), that

> selection as a court house or court room of a building or room dedicated to religion or permeated with religious symbols is inconsistent with the spirit and intent of the constitutional prohibitions of and fortifications against establishment of religion. U.S. Const. amend. I, amend. XIV, § 1; N.Y. Const. art. 1, § 3.

Since there was no showing whatsoever that some other, more suitable place for holding Knapp's trial could not have been found, whether in Cooperstown or elsewhere in Otsego County, I believe that he should be retried for the reasons above stated.